**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Pedro Molera, et al.

    Plaintiffs,

v.

City of Nogales, et al.,

    Defendants.

No. CV-11-00097-TUC-JGZ

**ORDER**

Pending before the Court are two Motions for Summary Judgment.

Defendants City of Nogales, Assistant Chief Roy Bermudez, Captain Heriberto Zuniga and Lieutenant Carlos Jimenez ("the Nogales Defendants") filed a Motion for Summary Judgment on October 16, 2012. (Doc. 69.) Plaintiffs Pedro and Blanca Molera filed a Response on November 26, 2012. (Doc. 76.) The Nogales Defendants filed a Reply on December 11, 2012. (Doc. 84.) The Nogales Defendants seek summary judgment on Plaintiffs' claims of violation of 42 U.S.C. § 1983, intentional infliction of emotional distress, gross negligence and loss of consortium.

Defendant Sergeant Sergio Bon ("Sergeant Bon") filed a Motion for Summary Judgment on October 16, 2012. (Doc. 71.) Plaintiffs filed a response on November 26, 2012. (Doc. 77.) Sergeant Bon filed a reply on December 14, 2012. (Doc. 86.) Sergeant Bon seeks summary judgment on Plaintiffs' claims of violation of 42 U.S.C. § 1983, battery, false imprisonment, intentional infliction of emotional distress, gross negligence and loss of consortium.

For the reasons stated herein, the Court will grant the Motions.[1]

## FACTUAL / PROCEDURAL BACKGROUND

At all times relevant to the instant action, Plaintiff Pedro Molera ("Officer Molera") was employed as a Nogales City Police Officer. (NDSOF 1; PNSOF 1.)[2] The parties dispute the nature of Officer Molera's working conditions as a member of the Police Department's "motor squad." Officer Molera claims that his sergeant, Defendant Bon, promoted an environment of pranks and "horseplay" among the motor squad which the Nogales Police Department overlooked. (PNSOF P2-5.) The Nogales Defendants claim that the motor squad lacked cohesion but that the Nogales Police Department took active steps to improve the motor squad's sense of camaraderie. (NRDSOF 21-28.) It is undisputed that Sergeant Bon and Officer Molera engaged in frequent horseplay which included joking, taunting and physically challenging each other as well as other officers. (BDSOF 1; PBSOF 1.)

On February 8, 2010, Officer Molera entered Sergeant Bon's office to turn in citation paperwork. (NDSOF 1; PNSOF 1.) The parties dispute the manner in which Molera placed the clipboard on Bon's desk. (NDSOF 2; PNSOF 2.) A confrontation developed between Officer Molera and Sergeant Bon; Sergeant Bon un-holstered his department-issued Taser and removed the cartridge. (NDSOF 3; PNSOF 3.) Believing

---

[1] The Court finds this case suitable for decision without oral argument. *See* L.R. Civ. 7.2(f).

[2] The Nogales Defendants' Statement of Facts in Support of Motion for Summary Judgment (Doc. 70) is abbreviated as "NDSOF." Plaintiffs' Statement of Facts in Response to the Nogales Defendants' Motion for Summary Judgment (Docs. 78, 79, 81, 82) is abbreviated as "PNSOF." PNSOF was erroneously filed multiple times, with each filing including the same allegations of fact but different attached exhibits. Accordingly, the Court has cited to PNSOF's Exhibits by document number and page number. The Nogales Defendants' Statement of Facts in Support of Reply to Response to City of Nogales Defendants' Motion for Summary Judgment (Doc. 85) is abbreviated as "NDRSOF." NDRSOF fails to comply with LRCiv 56.1's requirement that each paragraph of the opposing party's separate statement of facts correspond by number to the moving party's statement of facts. Accordingly, the Court is unable to discern whether the Nogales Defendants dispute the additional facts alleged at pages 4-9 of PNSOF. Defendant Bon's "Separate Statement of Facts in Support of Their [sic] Motion for Summary Judgment" (Doc. 72) is abbreviated as "BDSOF." Plaintiffs' Statement of Facts in Response to Defendant Bon's Motion for Summary Judgment (Doc. 80) is abbreviated as "PBSOF."

Sergeant Bon to be joking, Officer Molera stepped toward Sergeant Bon's chair so that he was standing over Sergeant Bon, and said something along the lines of "if you are going to take it out, use it." (NDSOF 4; PNSOF 4.)  Officer Molera claims that Sergeant Bon pointed the Taser at Officer Molera's genitals; Sergeant Bon claims that he was holding the Taser in his own lap and Officer Molera leaned into it as he stood over Sergeant Bon. (NDSOF 5; PNSOF 5.) Despite feeling the Taser on his penis, Officer Molera did not step back. (NDSOF 6; PNSOF 6.) Sergeant Bon intentionally turned the Taser on and off, shocking Officer Molera on the penis. (NDSOF 7; PNSOF 7; BDSOF 21; PBSOF 21.) Sergeant Bon testified that he did not intend to cause Officer Molera harm and that he was unaware of how close Officer Molera was to the Taser when he turned it on. (Doc. 70-1, pg. 24.) According to Officer Molera, when he examined his penis soon after, it was excessively red. (NDSOF 10; PNSOF 10.) Two other officers were present during the tasing incident: Officer Gallego and Officer Aguirre. (NDSOF 9; PNSOF 9.) Officer Gallego did not actually see the tasing. (*Id*.)

On February 11, 2010, Officer Molera reported the tasing incident to Lt. Jimenez, the next in the chain of command. (NDSOF 12; PNSOF 12.) Chief of Police Kirkham was also informed of the incident and immediately instructed Assistant Chief Bermudez to begin an internal investigation. (NDSOF 14; PNSOF 14.) Sergeant Bon was placed on administrative suspension pending the investigation. (NDSOF 15; PNSOF 15.) On March 17, 2010, a memo was directed to Sergeant Bon informing him of Chief Kirkham's intent to dismiss him from employment. (NDSOF 16; PNSOF 16.) Sergeant Bon resigned on March 18, 2010. (NDSOF 17; PNSOF 17.)

On February 17, 2010, Officer Molera signed a workers' compensation claim form describing the tasing incident. (Doc. 70-1, pg. 45.) Officer Molera accepted the benefits paid to him as a result of the workers' compensation claim. (Doc. 701-, pg. 16.) Officer Molera testified that he felt that his superiors at the Nogales Police Department "pushed [him] into" filing out the workers' compensation claim. (Doc. 70-1, pg. 16.)

On February 7, 2011, Plaintiffs filed their Complaint in the instant action, alleging the following claims: Count 1, violation of 42 U.S.C. § 1983 (all Defendants); Count 2, battery (Defendant Bon); Count 3, false imprisonment (Defendant Bon); Count 4, intentional infliction of emotional distress (all Defendants); Count 5, gross negligence (all Defendants); and Count 6, loss of consortium (all Defendants).  (Doc. 1.)

## STANDARD OF REVIEW

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party moving for summary judgment initially must demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325.  The moving party merely needs to point out to the Court the absence of evidence supporting its opponent's claim; it does not need to disprove its opponent's claim. *Id.; see also* Fed. R. Civ. P. 56(c).

If a moving party has made this showing, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also Anderson*, 477 U.S. at 256; *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).  The nonmoving party may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

## ANALYSIS

**I.  Defendants are entitled to summary judgment on Plaintiffs' claim for violation of 42 U.S.C. § 1983.**

42 U.S.C. § 1983 ("§ 1983") provides a civil remedy for the deprivation of any rights, privileges, or immunities secured by the Constitution under color of state law. Before considering Defendants' arguments with respect to Plaintiffs' § 1983 claim, the Court first notes that some portions of the § 1983 claim alleged in Plaintiffs' Complaint have no legal support.  In Count 1, Plaintiffs allege that Defendants violated the following Constitutional rights: (1) the Fourth Amendment protection against unreasonable search and seizure; (2) the Fourteenth Amendment guarantee of due process; (3) the Fourteenth Amendment guarantee of equal protection; (4) the right to be free from unlawful interference; (5) the right to be free from assault and bodily injury; (6) the right to be free from false imprisonment; and (7) the right to be free from unlawful detention. (Doc. 1, pgs. 4-5.) Only the first three of these "rights" are actually recognized by the Constitution. Plaintiffs' claim that the Constitution guarantees protection against violation of common law concepts such as "unlawful interference," "assault," and "false imprisonment" are without merit.  In addition, there are no facts alleged in the Complaint which support an inference that Plaintiff Blanca Molera's constitutional rights were infringed upon in any way. Accordingly, the Court will construe Count 1 of Plaintiffs' Complaint as asserting that Defendants violated Officer Molera's constitutional rights to protection against unreasonable search and seizure, due process and equal protection.[3] The Court concludes that Defendants are entitled to summary judgment on Plaintiffs' § 1983 claim because:  (1) Plaintiffs have failed to demonstrate that the City of Nogales was deliberately indifferent to the need for supervision/training within the police

---

[3] Defendants' Motions for Summary Judgment construe Plaintiffs' Complaint as asserting these three constitutional claims in Count 1.  Defendant Bon argues that Officer Molera's alleged rights to be free from unlawful interference, assault and false imprisonment either fail to state a constitutional claim or fall within his Fourth and Fourteenth Amendment claims. (Doc. 71, pg. 10.)  Plaintiffs' response to this argument is unclear, but it appears that Plaintiffs concede that their recitation of rights to be free from unlawful interference, assault and false imprisonment fall within their Fourteenth Amendment due process claim. (Doc. 77, pg. 7.)

- 5 -

department; (2) Plaintiffs have failed to present evidence in support of their claim that Officer Molera's supervisors knew about but disregarded the inadequate officer training; and (3) Sergeant Bon was not acting under color of state law at the time of the tasing. Because the Court concludes that Plaintiffs have failed to establish that Defendants engaged in unlawful conduct, it does not reach the issue of whether Plaintiffs have demonstrated that Officer Molera was deprived of a cognizable constitutional right.

### A. Defendant City of Nogales is entitled to summary judgment on Plaintiffs' § 1983 claim because Plaintiffs have not identified a municipal custom that led to any constitutional violation.

In order to establish a violation of § 1983 against a municipality like the City of Nogales, Plaintiffs must prove that the City of Nogales: (1) adopted an impermissible policy which violated Officer Molera's constitutional rights; or (2) was deliberately indifferent to the need for action necessary to safeguard Officer Molera's constitutional rights, and Officer Molera's rights were violated as a result. *Gibson v. County of Washoe, Nev.,* 290 F.3d 1175, 1186 (9th Cir. 2002). While difficult to decipher, Plaintiffs' claim against the City of Nogales appears to fall within the second category: Plaintiffs allege that the City of Nogales deliberately ignored a culture of horseplay among its officers and inadequately supervised them, resulting in a deprivation of Officer Molera's constitutional rights.[4]

---

[4] Plaintiffs describe the City of Nogales as having a "policy of inadequately supervising and/or training officers and of tolerating misconduct of officers." (Doc. 76, pg. 10.) Although Plaintiffs describe this as a "policy," the Court construes this as a claim of deliberate indifference. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (noting that "it is therefore difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate.") The Court declines to consider Plaintiffs' one-sentence contention that the City of Nogales violated Officer Molera's constitutional rights when it failed to train its employees regarding the right to refuse workers' compensation, as that argument is not alleged in the Complaint and Plaintiffs have failed to cite any legal authority suggesting that such training is required and/or that failure to provide it amounts to a constitutional deprivation.

To prove deliberate indifference, Plaintiffs must show that the City of Nogales made a "conscious choice" to follow a course of action from among various alternatives. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). In addition, Plaintiffs must demonstrate that the City of Nogales was on actual or constructive notice that failure to properly train and supervise its officers would likely result in a constitutional violation. *See Gibson*, 290 F.3d at 1186. Plaintiffs have failed to demonstrate a material issue of fact with respect to this prong of their § 1983 claim because the two pieces of evidence presented by Plaintiffs do not support an inference of deliberate indifference on the part of the City of Nogales.[5] First, Plaintiffs claim that Officer Molera's fellow officer, Officer Sullivan, testified that the City of Nogales knew that improper horseplay was occurring among the officers and the City of Nogales made a conscious choice not to interfere. However, Officer Sullivan testified that while "lieutenants, commanders, everybody knew … that we got along roughly with each other," that knowledge did "not necessarily" include "the tasing and stuff" and that his supervisors "made comments to us and addressed those issues." (Doc. 72, Ex. D, pgs. 42-43.) Officer Sullivan also testified that the City of Nogales brought in training programs on hostile work environments. (*Id.*, pg. 48.) Second, Plaintiffs also claim that Assistant Chief Bermudez presented a "cohesion project" addressing problems of cohesion among the officers, which Plaintiffs characterize as proof of a workplace culture that tolerated improper horseplay. However, while Bermudez's presentation may be construed as evidence that some of Officer Molera's superiors knew there were problems within the motor squad, the presentation also compels the conclusion that the supervisors actively attempted to take corrective action. Accordingly, the cohesion project does not constitute evidence of deliberate

---

[5] Plaintiffs describe a third piece of "evidence," *i.e.* that Officer Molera did not timely report an incident in which Sergeant Bon pointed a gun at his head because Officer Molera did not believe his supervisors would take corrective action. (Doc. 76, pg. 11.) Plaintiffs claim that this "evidence" demonstrates the City of Nogales' indifference to the lack of supervision. However, no such testimony from Officer Molera exists on the record. Officer Molera testified that he initially refrained from reporting the incident because "it had been ingrained so long in our brains that this stuff is sort of normal." (Doc. 70-1, pg. 10.)

- 7 -

indifference.[6] Thus, Plaintiffs have failed to demonstrate a material issue of fact with respect to their claim that the City of Nogales was deliberately indifferent to a lack of supervision/training in the police department.[7] Accordingly, the City of Nogales is entitled to summary judgment on Count 1 of Plaintiffs' Complaint.

### B. Defendants Kirkham, Bermudez, Zuniga and Jimenez are entitled to summary judgment on Plaintiffs' § 1983 claim because Plaintiffs have not established that Officer Molera's supervisors engaged in wrongful conduct.

Plaintiffs' Complaint identifies Defendants Kirkham, Bermudez, Zuniga and Jimenez as Nogales Police Department officers serving in a supervisory role.[8] In order to establish a violation of § 1983 against supervisor defendants, Plaintiffs must prove that Officer Molera's supervisors: (1) set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) engaged in culpable action or inaction in training, supervision, or control of subordinates; (3) acquiesced in the constitutional deprivation by subordinates; or (4) showed a "reckless or callous indifference to the rights of others." *See Moss v. United States Secret Service*, 675 F.3d 1213, 1231 (9th Cir. 2012). Plaintiffs contend that Officer Molera's supervisors "knew or should have known" that "[Sergeant] Bon had previously used his department–issued weaponry in an inappropriate manner with Officer Molera and other officers who are subordinate to him" and that Officer Molera's supervisors acquiesced in inadequate

---

[6] In addition, Assistant Chief Bermudez's presentation was not related to the culture of horseplay with which Plaintiffs take issue. Bermudez testified that his presentation was designed to address a "lack of direction [and] sense of belonging" among the motor squad officers. (Doc. 81-1, pg. 3.)

[7] This conclusion is further supported by the undisputed evidence demonstrating that when the City of Nogales Police Department learned of the tasing incident, it took immediate corrective action that resulted in Sergeant Bon's termination. The evidence before the Court leads only to one reasonable inference, which is that rather than ignore the alleged "horseplay," the City of Nogales responded appropriately to improper conduct in the work place.

[8] The Court notes that both the Complaint and Plaintiffs' Statements of Fact are devoid of any factual assertions regarding Defendant Zuniga.

- 8 -

training and supervision of officers. (Doc. 76, pgs. 12-13.) To the extent Plaintiffs support this claim with citation to their Complaint, they fail to comply Fed. R. Civ. P. 56(e)'s directive that they may not rest upon mere allegations but must set forth specific facts showing that there is a genuine issue for trial. The only evidence presented by Plaintiffs in support of their claim that Officer Molera's supervisors knew about but disregarded inadequate officer training is the testimony of Officer Sullivan.[9] (Doc. 76, pg. 13.) For the reasons stated in Section I.B., this testimony does not establish that Officer Molera's supervisors knew about improper use of the Taser, nor does it support an inference that the supervisors failed to take corrective action when officers engaged in "horseplay." Accordingly, Defendants Kirkham, Bermudez, Zuniga and Jimenez are entitled to summary judgment on Count 1 of Plaintiffs' Complaint.

### C. Defendant Bon is entitled to summary judgment on Plaintiffs' § 1983 claim because he was not acting under color of state law.

In order to establish a violation of § 1983 against an individual state actor, Plaintiffs must prove that the individual was acting "under color of state law." *See Huffman v. County of Los Angeles*, 147 F.3d 1054, 1057 (9th Cir. 1998). Only if Sergeant Bon's actions were in some way related to the performance of his official duties could his acts be fairly said to be under color of state law. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996). In order to determine whether Sergeant Bon was acting under color of state law, the Court examines "three critical requirements." *See Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006). First, the defendant's action must have been "performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties." *Id.* Second, the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the

---

[9] Officer Sullivan also testified that he had witnessed Sergeant Bon and Officer Molera firing their Tasers near each other's legs when testing the Tasers, but he did not testify that any supervisors witnessed this. (Doc. 72, Ex. 4, pg. 45.) To the contrary, Officer Sullivan testified that Officer Molera's supervisors did not "necessarily" know about the tasing games. (Doc. 72, Ex. D, pg. 42.)

behavior of others. *Id.*  Third, the challenged conduct must be "related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Id.*  In the present case, Plaintiffs have failed to demonstrate the first or third prongs of this test.  No reasonable juror could infer that Sergeant Bon was pretending to act in his official capacity when he tased Officer Molera.  The undisputed facts demonstrate that Officer Molera and Sergeant Bon historically threatened to tase each other and at the time of the tasing Officer Molera was posturing and/or standing over Sergeant Bon daring him to turn the Taser on.  "Just because [defendant] is a police officer does not mean that everything he does is state action." *Gritchen v. Collier*, 254 F.3d 807, 813 (9th Cir. 2001). Tasing a subordinate officer is undisputedly outside the scope of Sergeant Bon's official duties.[10]  *See id.* (finding that officer who threatened to sue a private citizen during a traffic stop was not acting under color of state law given that such conduct was not subject to the control of the police department and was quintessentially personal).  This case is factually similar to *Martinez v. Colon*, 54 F.3d 980, 987 & n.5 (1st Cir. 1995), *cited in Anderson v. Warner,* 451 F.3d 1063, 1068 (9th Cir. 2006), in which one officer accidentally shot another officer in the groin while "horsing around."   The *Martinez* court concluded: "though on duty and in uniform, [the assailant's] status as a police officer simply did not enter into his benighted harassment of his fellow officer. Hazing of this sort, though reprehensible, is not action under color or pretense of law."  That reasoning applies with equally persuasive force in this case.  Accordingly, Defendant Bon is entitled to summary judgment on Count 1 of Plaintiffs' Complaint.

**II.   Defendants are entitled to summary judgment on Plaintiffs' claims for battery, false imprisonment, intentional infliction of emotional distress, gross negligence and loss of consortium.**

Plaintiffs' Complaint alleges state law claims of battery (Count 2, against Bon),

---

[10] Plaintiffs allege, and Defendants do not dispute, that the police department policy forbids a sergeant from tasing a subordinate outside of a training setting. (PNSOF pg. 5.)

- 10 -

false imprisonment (Count 3, against Bon), intentional infliction of emotional distress (Count 4, all Defendants), gross negligence (Count 5, all Defendants) and loss of consortium (Count 6, all Defendants). (Doc. 1, pgs. 5-8.) Each of these claims is precluded because it is undisputed that Officer Molera accepted workers' compensation for his injury. A.R.S. § 23-1022(A) provides, in relevant part:

> The right to recover compensation pursuant to this chapter for injuries sustained by an employee … is the exclusive remedy against the employer or any co-employee acting in the scope of his employment … except that if the injury is caused by the employer's willful misconduct, or in the case of a co-employee by the co-employee's willful misconduct, and the act causing the injury is the personal act of the employer, or in the case of a co-employee the personal act of the co-employee … and the act indicates a willful disregard of the life, limb or bodily safety of employees, the injured employee may either claim compensation or maintain an action at law for damages against the person or entity alleged to have engaged in the willful misconduct.

An employee who accepts compensation waives the right to exercise any option to institute proceedings in court against his employer or any co-employee acting within the scope of his employment. *See* A.R.S. § 23-1024. The waiver provision is triggered when the employee accepts compensation for the injury. *See AAA Cab Service, Inc. v. Industrial Com'n of Arizona*, 141 P.3d 822, 823-24 (Ariz. App. 2006). Because it is undisputed that Officer Molera received a workers' compensation payment for the injury caused by the tasing, his state law claims are precluded under Arizona law. *See Callan v. Bernini*, 141 P.3d 737, 743-44 (Ariz. App. 2006) (granting summary judgment in favor of police department on the ground that police officer injured on the job had accepted workers' compensation benefits and was therefore precluded from maintaining legal action).

Officer Molera contends that three material issues of fact exist regarding application of A.R.S. §§ 23-1022-24. First, he claims that a material issue of fact exists as to whether Officer Molera's injury occurred "in the course and scope of employment." "The term 'arising out of' is said to refer to the origin or cause of the injury, while 'in the course of' refers to the time, place and circumstances of the accident in relation to the

employment." *Epperson v. Industrial Commission*, 549 P.2d 247, 249 (Ariz. App. 1976). "By definition, if the employee is assaulted by a third person 'because of his employment,' the injury both arises out of and in the course of employment." *Estate of Sims v. Industrial Com'n of Arizona*, 673 P.2d 310, 313 (Ariz. App. 1983) (citing A.R.S. § 23–901(12)(b)). It is undisputed that Officer Molera would not have been injured but for his working relationship with Officer Bon. The injury occurred while Officer Molera was on-shift, turning in paperwork, and arose from a work environment of pranks and horseplay. *See Peter Kiewit Sons' Co. v. Industrial Commission*, 354 P.2d 28, 32 (Ariz. 1960) (holding that employee assaulted at work by an inspector following an argument about the manner in which the employee was performing his job was injured in the course and scope of employment). Accordingly, no material issue of fact exists as to the circumstances of Officer Molera's injury.

Second, Officer Molera claims that a material issue of fact exists regarding whether his injury was caused by the Nogales Defendants' "willful misconduct." However, under the plain language of the statute, even if Sergeant Bon's actions were willful, Officer Molera had the option of claiming compensation or maintaining an action at law for damages.[11] It is undisputed that he claimed compensation. Accordingly, the waiver provision applies.[12]

Third, Officer Molera claims that he did not intend to waive his right to pursue judicial remedies against the Defendants when he filed his workers' compensation claim. This argument was expressly rejected by the Arizona Supreme Court in *Anderson v.*

---

[11] The Court notes that even if this argument were credited, it would not apply to Officer Molera's claims of gross negligence or loss of consortium because those claims do not allege willful misconduct. *See Lowery v. Universal Match Corp.,* 430 P.2d 444, 446 (Ariz. App. 1967). In addition, Officer Molera has not alleged any intentional wrongdoing by the Nogales Defendants -- even his claim for intentional infliction of emotional distress fails to identify any intentional act by the Nogales Defendants. *Id.*

[12] The Nogales Defendants further argue that in addition to claiming compensation, Officer Molera failed to comply with A.R.S. § 23-906 because he failed to give notice to Defendants of his intent to reject compensation and maintain an action at law. A.R.S. § 23-906 does not apply to an employee who elects to maintain an action at law following an injury caused by willful misconduct. A.R.S. § 23-906 is the mechanism by which employees may opt out of workers' compensation prior to sustaining an injury. *See* A.R.S. § 23-906(C).

*Industrial Com'n of Arizona*, 711 P.2d 595, 601 (Ariz. 1985): "[A.R.S. § 23-1024(A) creates this waiver without attaching the condition that the worker understand that he has common law rights or that he is waiving them." *See also Callan,* 141 P.3d at 743-44 (collecting cases demonstrating that the loss of the right to sue the employer [is not] dependent upon the application of common law principles of waiver that require knowledge of the existence of an alternate remedy and an informed choice of remedy.) Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claims for battery, false imprisonment, intentional infliction of emotional distress, gross negligence and loss of consortium (Counts 2-6 of Plaintiffs' Complaint).

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Motion for Summary Judgment filed by the Nogales Defendants on October 16, 2012 (Doc. 69) is GRANTED;

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Defendant Bon on October 16, 2012 (Doc. 71) is GRANTED;

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment in favor of Defendants and close the file in this matter.

Dated this 9th day of September, 2013.

Jennifer G. Zipps
United States District Judge